**FOSTER et al. v. FOSTER et al.**    (No. 2244.)

(Court of Civil Appeals of Texas. Texarkana. March 26, 1920. Rehearing Denied April 8, 1920.)

**1. Trial ⪧286—Instruction as to burial contrary to widow's wishes held not to deny recovery without showing good faith.**

In an instruction as to justification for burial of a body without consent of the widow which stated in the alternative several situations indicating abandonment by the widow and then stated, "and if you further believe" that the burial was made by plaintiff without intending to deprive the widow of her privileges, the last clause qualifies all preceding ones so that the instruction does not deny recovery in certain cases without requiring finding of good faith.

**2. Dead bodies ⪧1, 3, 9—Good-faith interference with widow's right to body's burial place is not actionable.**

A widow has no property right in the body of her deceased husband, but a mere privilege to control the place and manner of burial, and is legally charged with performance of that service; but the next of kin have also some rights and duties, and are not liable to the widow in damages where they buried the body in good faith believing that the widow had waived her privilege.

**3. Dead bodies ⪧9—Widow may abandon right to choose burial place.**

A widow may waive her privilege to control the place and manner of burial by abandoning her duties in that respect, and where the jury, on sufficient evidence, found that she was indifferent to the disposition of her husband's remains and left them to be buried by his father, she cannot recover damages from the father.

**4. Dead bodies ⪧9—Evidence of widow's unchastity admissible to minimize damages for burial contrary to wishes.**

In an action by a widow against her father-in-law to recover damages for the burial of her husband's body contrary to her wishes, evidence of her unchastity is admissible on the issue of damages.

**5. Dead bodies ⪧9—Widow cannot prove costs of future removal to place of her choice.**

A widow cannot recover as damages the cost of removing her husband's body from the place where it was buried by his father to the place of her choice before she has actually made such removal.

**6. Injunction ⪧12—Refusal to restrain opposition to removal of body was proper under the evidence not showing opposition.**

In an action for damages for the burial of plaintiff's husband in a place not chosen by her, an injunction to restrain opposition by defendant to removal of the body to the place selected by her was properly denied, where the court might have found from the evidence that there was in fact no opposition to the removal.

**7. Appeal and error ⪧964—Discretion as to separation of actions by widow and children for unauthorized burial held not reversible.**

The rights of action of a widow and her children for damages for the unauthorized burial of their husband and father are for a tort affecting each individual separately, and, though the court may for convenience permit them to be prosecuted jointly as arising from the same transaction, that is within the court's discretion, and his requirement that they be prosecuted separately is not reversible.

Appeal from District Court, Hopkins County; Wm. Pierson, Judge.

Action by Amanda E. Foster and others against W. T. Foster and others to recover damages for the burial of the body of plaintiffs' husband and father without their knowledge and consent. Judgment for defendants, and plaintiffs appeal. Affirmed.

Thornton & Thornton, of Sulphur Springs, for appellants.

C. E. Sheppard, of Sulphur Springs, for appellees.

HODGES, J. On October 24, 1918, Dr. G. W. Foster died at his residence at Yantis, in Wood county, Tex., about 15 miles from Sulphur Springs, the county seat of Hopkins county. He left surviving him his wife and three minor children, the oldest being a girl 13 years of age.

The widow and children are the appellants in this appeal. In January, 1919, Mrs. Foster for herself, and as next friend for her minor children, filed in the district court of Hopkins county this suit against W. T. Foster, the father, and J. N. Foster, an uncle, of her deceased husband. Her petition alleged, in substance, that after the death of her husband W. T. Foster and J. N. Foster fraudulently, deceitfully, unlawfully, wantonly, and maliciously took his body and buried it in the absence of herself and children, without their knowledge or consent, and at a place different from that selected by them; that by reason of the wrongful and unlawful acts of the defendants she and her children were denied the privilege of being present at the funeral service and burial of the deceased husband and father; and

that they were prostrated with grief and disappointment. It is further alleged that, in her effort to reach the place of burial before the funeral services were concluded, she contracted a cold and became sick, and endured much suffering thereafter as the result. She alleged that, in order to reach the place of burial before the conclusion of the services, she hired a car and driver at a cost of $5. She further alleged that she desired to have the body of her husband disinterred and removed to another place, and that the expense of the removal will be $250. The petition concludes with a prayer for damages both actual and exemplary. The appellees, defendants below, pleaded in abatement the misjoinder of parties plaintiff, alleging that the petition showed that there was no common cause of action; that each should maintain a separate suit for the damages claimed by each. They also answered to the merits, denying generally and specially the facts set out in the plaintiffs' petition, and alleged that the appellant Mrs. Foster abandoned the body of her deceased husband after his death without making any arrangements for its burial, and that they took charge of the body for the sole purpose of giving it a decent burial, without any knowledge that she intended to have it buried at a different place, and without any intent to injure the plaintiffs in the manner charged.

The facts adduced upon the trial show that Dr. Foster died of pneumonia after an illness extending over a period of about ten days. He resided at the time a few miles distant from his father and uncle. His death occurred about 8 o'clock on the night of October 24th. His father and uncle were notified during that night, and arrived at Yantis the next morning about sunrise.

According to the testimony of Mrs. Foster, quite a number of the neighbors had gathered in, and she had spoken to two or three of them, Cooksey, Adams, and others, about the burial of her husband. She told them, she says, that she wanted him buried at Sulphur Springs by the Masons and the Odd Fellows; that she wanted a robe procured, and a suitable casket; that she did not want him buried at the family burying ground situated at a place called "Black Oak." She further testified that her daughter was quite sick at that time, and she wished to carry the child to a sanitarium at Sulphur Springs, and endeavored to get a conveyance for that purpose the night her husband died, but was unable to do so. She made arrangements the following day, however, and took her three children to Sulphur Springs. She says that while there she spoke to a member of the Masonic Lodge and of the Odd Fellows Lodge about having the remains of Dr. Foster interred at Sulphur Springs. She later learned, for the first time, that W. T. Foster, her father-in-law, had arranged to have the remains buried at "Black Oak," which appears to have been a burying ground somewhere in the country 14 miles distant from Yantis. She further testified that, upon learning that arrangements were being made for burial at "Black Oak," she hired a car and went as rapidly as she could, but arrived at the graveyard just after the funeral services had ended and the grave filled. She testified that she and her husband during his lifetime had an agreement that each was to be buried at Sulphur Springs. She claims that by reason of the distance from Sulphur Springs to "Black Oak" she and her children will in future be deprived of the privilege of visiting and caring for the grave, and that that fact has caused them much grief and pain.

Cooksey and Adams testified that no arrangements for burying the remains had been made with them by Mrs. Foster. Cooksey stated that Mrs. Foster did express to him a wish to have them buried at Sulphur Springs, and that she wanted a robe and a good casket; but he did not agree to procure these things and did not consider that any burial arrangements had been definitely made. Other witnesses testified that they knew of no such arrangements being made by Mrs. Foster previous to her departure for Sulphur Springs.

W. T. Foster testified that, after he arrived at the residence of his deceased son, he conversed with Mrs. Foster, and that neither she nor any one else said anything to him about having made any arrangements for burial or about where it would take place. "Black Oak" was the old family burying ground, and he assumed that there would be no objection to his son's being buried there. Before leaving home, he had given directions to have the grave dug at that place. Mrs. Foster requested him, soon after his arrival at Yantis, to carry her and the children to Sulphur Springs; but he declined to do so. After waiting some time, and seeing no evidences of any funeral arrangements having been made, he inquired of neighbors present if Mrs. Foster had made any, and was informed that she had not. He then, in company with one of the neighbors, went to Sulphur Springs, purchased a casket and robe, secured a hearse, and returned to the family residence. As he was returning, he passed Mrs. Foster and the children going to Sulphur Springs; he did not recognize her at the time, and did not know that she had left home until after she had passed him on the road. He had the body prepared for burial, carried to "Black Oak" graveyard, and interred. Mrs. Foster arrived at the graveyard just about the time the services were closed; she sat in the car, and did not go to the grave.

J. N. Foster testified that he had been informed by the little girl that her mother desired the remains buried at Sulphur Springs, but he did not communicate that information

to W. T. Foster. He further testified that two or three years prior to his death Dr. Foster had told the witness that he (Dr. Foster) desired to be buried at "Black Oak" when he died. Other testimony introduced will be referred to in the discussion of the question presented.

The plea in abatement was sustained by the court, and thereafter Mrs. Foster elected to prosecute her personal suit alone, and the action as next friend for her minor children was dismissed.

In charging the jury the court instructed a verdict in favor of the defendant J. N. Foster, presumably upon the ground that the evidence was not sufficient to justify a recovery. He also informed the jury that Mrs. Foster had the right to choose the place for the burial of her deceased husband. He then gave the following instructions, which form the basis of a number of assignments of error:

"If you believe from the evidence that plaintiff intended and purposed to have Dr. G. W. Foster buried at Sulphur Springs, and if you believe from the evidence that before leaving Yantis she made arrangements for having him buried at Sulphur Springs, and if you believe from the evidence that the defendant W. T. Foster had been informed or had knowledge that plaintiff Mrs. Amanda E. Foster desired and intended to have deceased, Dr. G. W. Foster, buried at Sulphur Springs, Tex.; and if you further believe that with such knowledge and information, if he had same, he took charge of the body of deceased, Dr. G. W. Foster, and, contrary to the wishes and will of plaintiff Mrs. Amanda E. Foster, had the same interred at Black Oak cemetery; and if you further believe that on account thereof plaintiff was deprived of the privilege of attending the funeral and of having the remains buried at Sulphur Springs; and if you further believe that by reason thereof she suffered mental pain and anguish—defendant W. T. Foster would be liable to plaintiff for such damages as you may find she suffered thereby, if any, and if you so find you will find for the plaintiff.

"However, if you believe from the evidence that plaintiff Amanda E. Foster did not intend and purpose to have Dr. G. W. Foster buried at Sulphur Springs; or, if she did have such intention, if you find that before leaving Yantis she had not made arrangements for having him so buried; or if you believe that when defendant W. T. Foster returned from procuring a casket and clothes for the burial of the body of the deceased, Dr. G. W. Foster, that he was informed and believed that plaintiff had taken her children and left the home of deceased and had failed to make any arrangements for the burial of the body of deceased; and that acting upon such belief and information, if any, said defendant W. T. Foster caused the body of the deceased to be carried to and buried in the Black Oak Cemetery; or if you find from the evidence that defendant W. T. Foster had no knowledge that plaintiff Amanda E. Foster desired and purposed to have the deceased, Dr. G. W. Foster, buried at Sulphur Springs, if she did so purpose and intend; and if you believe that he buried said body at Black Oak cemetery without intending to violate or thwart the purpose and will of the said plaintiff, and without intending to injure and hurt plaintiff in feelings, or to deprive her of the privilege of selecting the burial place of and being present at the burial of the said Dr. G. W. Foster; or if you find from the evidence that plaintiff was not injured in her feelings on account of the deceased, Dr. G. W. Foster, being buried at Black Oak cemetery—then and in either event you will find for the defendant W. T. Foster."

The jury returned a verdict in favor of both defendants. It would unnecessarily extend the length of this opinion to notice in detail each of the assignments which attack different portions of the charge quoted. To avoid prolixity, we shall endeavor to discuss them in such manner as to indicate our view of the law applicable to the disposition of the questions raised.

The first paragraph quoted above, which submits the conditions under which she would be entitled to a verdict for damages, is not affirmatively unfair to the appellant and is not subject to any well-defined objection made in the court below.

[1] The second paragraph, which submits in different groups the facts that entitled the defendant W. T. Foster to a verdict, is assailed as erroneous in several respects. The objections filed in the court below to that portion of the charge are as follows:

"Plaintiff excepts and objects to the fourth paragraph of said charge, because the jury are therein instructed that if they find that plaintiff left Yantis without making arrangements for the burial of the deceased, or that if they believe that when W. T. Foster returned from procuring the casket and clothes for the burial of the deceased, and were informed and believed that plaintiff had taken the children and left the home of the deceased, and had failed to make any arrangements for the burial of the body of the deceased, then that alone would authorize the defendants to take the body and bury same at Black Oak, and if they did so they would not be liable."

Then follows a series of what may properly be considered arguments in support of the objections made. We do not think a fair reading of the charge renders it susceptible to the construction placed upon it by counsel for the appellant; that is, that the facts recited in the quoted objection were alone sufficient to exempt the defendant from liability. It will be observed that after grouping certain facts, which, if found to be true, would exempt and relieve the defendant from liability, the court added the following:

"And if you believe that he buried said body at Black Oak cemetery without intending to violate or thwart the purpose and will of the said plaintiff, and without intending to injure and hurt plaintiff in feelings or to deprive her of the privilege of selecting the burial place and

of being present at the burial of the said Dr. G. W. Foster," etc.

It is reasonable to conclude that this language was intended to qualify all of the preceding conditions in that paragraph of the charge to which it might be applicable. In other words, the court said, in effect, there must be an absence of any intent to interfere with the right of Mrs. Foster, or to injure her feelings in order to acquit the defendant upon either of the grounds mentioned in the objection. The testimony was ample to support a finding by the jury that Mrs. Foster unnecessarily left her home for Sulphur Springs without having made any arrangements for the burial of the body. The jury might easily have found that her leaving was, under the circumstances, an abandonment. The evidence also justified a finding that W. T. Foster acted in the utmost good faith, without any notice that Mrs. Foster desired the burial to be at Sulphur Springs, and solely with the intent to give his dead son a decent interment in the old family burying ground. We think it improbable that any other verdict in this case would have been rendered had the court so framed his charge as to specifically meet the objections above made and render certain the construction we have adopted.

There was not sufficient evidence to justify a judgment against J. N. Foster, and there was no error in instructing a verdict in his favor.

[2, 3] A number of special charges were requested and refused. These can be disposed of by a statement of the rule which we think should govern the determination of the question of liability under the facts presented. The complaint here is, not that the remains were improperly or indecently interred at an unsuitable place, but that they were interred at a distance from Sulphur Springs, thereby depriving the appellant and her children of the opportunity of being present at the burial and of visiting the grave in the future when they felt so inclined. Some of the refused charges assume that a mere violation of the wife's legal right to choose the burial place, however innocently done, creates a cause of action in her favor. This is not our view of the law. The burial of the dead with reasonable promptness is a duty which society has a right to say shall not be neglected. While the surviving spouse has the prior right to designate the place and manner of burial, and is legally charged with the duty of performing that service, the next of kin also have some right and owe some duties under certain conditions. 17 Cor. Juris, p. 1142; 8 Ruling Case Law, p. 691. It would be manifestly unjust to penalize the humane conduct of a parent who, innocent of any evil purpose, buries the dead body of his son in the family burying ground. The appellant had no property right in the body

of her husband. The law accords her the privilege of controlling the place and manner of burial in deference to the sentiments which are presumed to attend the relations of husband and wife. But she is not entitled to claim that privilege when she has abandoned the duties due upon such occasions. Testimony was offered and admitted over the objection of the appellant tending to show that she was unchaste and untruthful. There was other evidence, not objected to, that she and Dr. Foster did not live happily together. The jury might have concluded from all the evidence that the appellant was indifferent regarding the disposition of her husband's remains, left them for his father to dispose of, and that she in fact suffered no mental distress by reason of the burial at "Black Oak."

[4] The ruling of the court in admitting evidence as to the reputation of the appellant for chastity is the basis of an assignment of error. It is contended that such testimony was irrelevant and immaterial and was prejudicial to the appellant. The principal damages claimed in her suit were for mental suffering due to being denied the right to have her husband buried at the place of her choice. The existence and extent of such suffering depends upon the presence of the love and affection which usually attends the relations of husband and wife. It is not likely that a wife who has been untrue to her marriage vows would suffer to the same extent as one who had been virtuous and loyal to her husband. We think the testimony was admissible upon the issue of damages.

[5] Appellant insists that she still has the right to have the body of her husband exhumed and reinterred at Sulphur Springs, and that she is entitled to the cost of such services, which she places at $250. Conceding that she may still claim such a right and may also demand reimbursement for the expense it would entail, it would not be proper to grant that relief in this suit. Until the expense has been incurred, she has not been damaged in that respect. She is not entitled to recover the cost of an enterprise which she has never undertaken and may not undertake.

[6] Complaint is made of the refusal of the court to grant the injunction asked for restraining the defendant from interfering with the removal of the body in the future. The state of the evidence is such that the court might have concluded that there was in fact no opposition to that removal, and no occasion for the issuance of the writ.

[7] Appellant also assigns as error the ruling of the court in sustaining defendants' plea in abatement and requiring her to elect which suit she would prosecute. The contention is that such a joinder of parties and causes of action as was made in this case is permissible when the damages sued for

grow out of one transaction. Whether permissible or not, such combinations are sometimes tolerated by the courts, when they do not so complicate and multiply the issues as to interfere with the proper determination of the main questions involved. See W. U. Tel. Co. v. Morrow, 208 S. W. 690, and cases there referred to. But we do not feel inclined to reverse and remand this case because of the ruling objected to. It is evident that the appellant Mrs. Foster sustained no injury in the suit prosecuted for herself. She can only be heard to complain as an appellant ih the suit prosecuted as the representative of her children ,and which was dismissed at her election. While the children's claim for damages grows out of the same transaction upon which her suit is founded, she and they had no rights in common. The injuries of which they complain were to each separately. In the very nature of things, compensation, which is the purpose of the suits, must be measured by the mental suffering which each party plaintiff endured. The jury might have found in favor of one or more and against others. Had a verdict been rendered for all, the ends of justice would have required an apportionment of the damages unless the jury had concluded that each had sustained injuries to the same extent. The conduct complained of was not the breach of a contract in which the original parties plaintiff had a common interest, or an undertaking concerning any property which they jointly owned, but, if legally wrong, was a tort affecting each individual personally and separately.

Convenience is the only ground upon which the parties could insist that they be permitted to prosecute the suit jointly.

We are of the opinion that the facts present a case which rested largely in the discretion of the trial court, and we are not inclined to disturb his ruling upon that question.

The judgment will be affirmed.