**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 30, 2011

No. 10-50267

Lyle W. Cayce
Clerk

EVANSTON INSURANCE CO.

Plaintiff-Appellant/Cross-Appellee

v.

LEGACY OF LIFE, INC.

Defendant-Appellee/Cross-Appellant

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

Before GARWOOD, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:

This Texas law diversity case involves important and determinative questions of Texas law as to which there is no controlling Texas Supreme Court precedent. Accordingly, we certify those unresolved questions to the Supreme Court of Texas.

CERTIFICATION FROM THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME
COURT OF TEXAS, PURSUANT TO THE TEXAS
CONSTITUTION ART. 5, § 3-C AND TEXAS RULE OF
APPELLATE PROCEDURE 58.1.
TO THE SUPREME COURT OF TEXAS AND THE

No. 10-50267

HONORABLE JUDGES THEREOF:

**I. Style of the Case:  Parties and Counsel**

The style of the case is *Evanston Insurance Company, Plaintiff-Appellant/Cross-Appellee v. Legacy of Life, Incorporated, Defendant-Appellee/Cross-Appellant*, Case No. 10-50267, in the United States Court of Appeals for the Fifth Circuit, on appeal from the judgment of the United States District Court for the Western District of Texas, San Antonio Division.  Federal jurisdiction is based on diversity of citizenship.

The names of all the parties to the case, each of whom is represented by counsel, and the respective names, addresses and telephone numbers of their counsel, are as follows: Evanston Insurance Company, plaintiff and counter-defendant in the district court, appellee and cross-appellant in this court, represented by Marc J. Wojciechowski of Wojciechowski & Associates, P.C., 17447 Kuykendahl Road, Suite 200, Spring, Texas 77379, Tel. 281-999-7774; and Legacy of Life, Incorporated, defendant and counter-claimant in the district court, appellant and cross-appellee in this court, represented by John C. Cave of Gunn, Lee & Cave, P.C., 300 Convent, Suite 1080, San Antonio, TX 78205, Tel. 210-886-9883.

**II.  Statement of the Case**

This case involves the construction and application of a combined professional and general liability insurance policy issued by appellant Evanston Insurance Company (Evanston) to appellee-cross-appellant Legacy of Life, Incorporated (Legacy) for the term October 4, 2006, to October 4, 2007.  Legacy requested a defense from Evanston under the policy for a civil lawsuit styled *Debra Alvarez on Behalf of Alicia Garza v. Legacy of Life, Inc., et al.*, Cause No.

No. 10-50267

C-1810-08-1, District Court, 398th Judicial District, Hidalgo County, Texas.  In that underlying lawsuit, plaintiff Debra Alvarez alleged that in December 2006 while her mother, Alicia Garza, was terminally ill, she consented to Legacy's harvesting some of her mother's organs and tissues (including corneas, skin, bone, and arterial tissue) after her mother's death.  Ms. Alvarez alleges that she consented to the harvesting because Legacy, a non-profit corporation, represented to her that the harvested tissues would be distributed on a nonprofit basis, and that, contrary to these representations, Legacy instead transferred the tissues to a for-profit company, which sold the tissues to hospitals at a profit. It is alleged that Legacy and the for-profit company "are closely related entities," with the same individual serving as the chief Operating Officer of each, the same individual serving as the Quality Assurance Director of each and the address of each entity being "almost identical."  It is further alleged that the "close relationship between Legacy . . . and the" for-profit entity "leads to the belief that the two entities are engaged in unconscionable business practices aimed at profiting from the vulnerability [of] family members who have recently lost a loved one."  Ms. Alvarez's amended petition against Legacy alleges breach of contract, quantum meruit, civil conspiracy, conversion, fraud, fraudulent misrepresentation, fraudulent inducement, aiding and abetting fraud, civil theft, intentional infliction of emotional distress, and deceptive trade practices.  The amended petition also seeks recovery of "the reasonable value of the benefits of the tissue and bones provided."  It alleges that Legacy caused plaintiff "to suffer severe emotional distress" for which damages are sought.  It seeks to recover "Compensatory damages," "Emotional distress damages," "Restitution damages," and "Punitive or exemplary damages," as well as attorney's fees.  There is no

3

No. 10-50267

allegation that plaintiff suffered any physical injury.

Evanston denied Legacy's request for a defense in the underlying lawsuit, and filed this suit in the district court below on May 11, 2009, seeking a declaratory judgment that it had no duty to defend Legacy. Evanston maintained that the conduct alleged was outside the scope of the insurance policy's coverage. The policy provides insurance for both professional liability and general liability as follows:

> "1. *Professional Liability and Claims Made Clause*: To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD for Personal Injury arising out any act, error, or omission in professional services rendered or that should have been rendered by the Insured or by any person for whose acts, errors, or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as described in the Declarations provided always that such act, error or omission happens subsequent to the Retroactive Date as stated in the Declarations.
>
> 2. *General Liability and Claims Made Clause*: To pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declaration which the Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD for Personal Injury or Property Damage to which this insurance applies caused by an Occurrence provided:
> (a) the Occurrence takes place subsequent to the Retroactive Date as stated in the Declarations; and
> (b) solely in respect to Products Hazard or Completed Operations Hazard, as defined herein, such Personal Injury or Property Damage arises out of only these operations, goods or products specified in the Declarations."

The policy's "Definitions" section defines "Personal Injury" to mean "bodily

No. 10-50267

injury, sickness, or disease including death resulting therefrom sustained by any person...."   The policy defines "Property Damage" as "physical injury to or destruction of tangible property, including consequential loss of use thereof, or loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an Occurrence."

The policy's defense clause states that Evanston "shall defend any Claim or suit against the Insured seeking Damages to which this insurance applies, even if any of the allegations of the suit are groundless, false or fraudulent." The following direct quotations from Ms. Alvarez's complaint in the underlying lawsuit were identified by the parties as the relevant ones for determining whether that complaint sought damages to which the insurance applies, namely, damages for personal injury or property damage.

1. "Legacy of Life contracted with Ms. Alvarez on December 14, 2006.  Ms. Alvarez consented in the donation of her mother, Ms. Garza's, (1) Cornea/eyes; (2) Saphenous veins/Femoral veins and arteries; (3) Skin; (4) Bone and associated tissues within [] the arm; (5) Bone and associated tissues within the lower and upper leg, including the hip; and (6) Ribs/cartilage."

2. "The Estate of Alicia Garza is the rightful and legal owner of her remains."

3. "Although the remains of Alicia Garza are the sole and exclusive property of the Estate of Alicia Garza, Defendants have effectively taken the remains including tissue and bones without consent or license from the Estate of Alicia Garza."

4. "[Legacy] took Alicia Garza's remains including tissue and bones with the intent to deprive the Estate of Alicia Garza of its rightful ownership of the remains of Alicia Garza including tissue and bones and to capitalize on the potential commercial value of the remains including tissue and bones, which embodies the Estate of Alicia Garza's property."

5. "Plaintiffs seek the reasonable value of the benefits of the tissue and bones provided to Defendants."

6. "Defendants' actions in causing Plaintiffs to suffer severe emotional distress proximately caused damages for which Plaintiffs should be compensated."

In response to Evanston's declaratory judgment complaint, Legacy filed counterclaims for (1) a declaratory judgment that Evanston did have a duty to defend in the underlying lawsuit; (2) breach of contract; (3) deceptive insurance practices; and (4) violation of the Texas Insurance Code for prompt payment of claims. Legacy moved for partial summary judgment that Evanston: (1) has a duty to defend the underlying lawsuit; (2) breached its insurance contract with Legacy and must pay Legacy its defense costs for the underlying lawsuit; (3) violated the Texas Insurance Code provision for Prompt Payment of Claims and must pay Legacy an 18% penalty on its defense costs; and (4) must pay Legacy its attorneys' fees for this action. Evanston responded to Legacy's motion for partial summary judgment and filed a cross-motion for summary judgment that it had no duty to defend Legacy.

The district court issued judgment on January 15, 2010, granting Legacy's motion for partial summary judgment on the duty to defend issue, denying Evanston's motion for summary judgment, and entering declaratory judgment finding a duty to defend. Specifically, the district court determined that the policy's definition of "personal injury" was broad enough to cover extreme mental anguish and emotional distress. The district court further determined that the underlying lawsuit alleged "property damage" as covered by the policy for loss of use of the tissues and organs, because it believed that a Texas court could potentially find the deceased's tissues and organs were property. The district court noted, in particular, that "[g]iven the increasingly common practice of organ transplants and the widespread promotion of organ donation through

No. 10-50267

public service announcements and otherwise, more explicit holdings [clarifying the property- or quasi-property- status of organs under Texas law] may be just around the corner."

The January 15 judgment only addressed the duty to defend and did not address the other relief sought by Legacy in its summary judgment motion. Legacy filed a Motion to Amend or Alter the Judgment on February 12, 2010, requesting an amended judgment granting all relief sought by Legacy in its partial summary judgment motion.[1] The motion also asked the court not to enter final judgment in the case in order to preserve the deceptive insurance practices claim for trial because it was not part of Legacy's Motion for Partial Summary Judgment.[2] On March 11, 2010, the district court entered an Order Granting Motion to Amend the Judgment, and on the same day issued an Amended Judgment, which ordered Evanston to pay for all costs of the suit, but dismissed Legacy's remaining counterclaims for failure to state claims upon which relief can be granted. The district court justified this outcome by stating that "some would say that the Court stretched the concept of policy coverage to its outer limit" and because Evanston was simply exercising a legal right to file a declaratory judgment action and ask the court whether it had a duty to defend Legacy on this "exceedingly close" question.

---

[1] According to the Certificate of Conference attached to this motion, the result of a conference with opposing counsel was that, while the opposing counsel disagreed with the district court's determination on duty to defend, "opposing counsel agreed that the Court's Judgment was not a final judgment and that summary judgment should be granted in Defendant's favor on the breach of contract and the violation of the Texas Insurance Code for failure to make prompt payment of claims."

[2] Legacy makes no assertions or complaints regarding the deceptive insurance practices claim on this appeal. We accordingly regard this claim as abandoned.

No. 10-50267

The judgment also did not address Legacy's request of an order requiring Evanston to pay Legacy's attorneys' fees in the underlying lawsuit. Therefore, Legacy filed a Motion for Attorney Fees and Expenses, for fees in both the instant and underlying suits. The district court denied the request.

Evanston appeals the district court's grant of summary judgment to Legacy, denial of its summary judgment motion, and entry of declaratory judgment that it had a duty to defend Legacy. Legacy cross-appeals the dismissal of its counterclaims, denial of summary judgment on those counterclaims, and denial of attorneys' fees.

## III. Legal Issues

Evanston's appeal asserts that the district court erred in finding that Evanston owed Legacy a duty to defend in the underlying lawsuit, contending that the underlying claim did not assert either "personal injury" or "property damage" as required to trigger the duty to defend under the insurance policy.

We also are aware of the settled Texas law that if an insurance policy provision is susceptible of more than one reasonable construction, the reasonable construction most favorable to the insured is adopted, but if there is only one reasonable construction of a policy provision then it is the court's duty to give the words used their plain meaning even though this denies coverage. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

As an initial matter, the parties dispute the proper application of the "eight corners" rule, which is the method applied by Texas law to determine whether a liability insurance company has a duty to defend under an insurance policy. *See GuideOne Elite Insurance v. Fielder Road Baptist Church*, 197

No. 10-50267

S.W.3d 305, 308 (Tex. 2006). The eight corners rule requires that the "four corners" of the complaint must allege facts that could possibly assert a claim within the scope of coverage in the "four corners" of the insurance policy. *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005). Texas law instructs that "[t]he eight corners rule is to be applied liberally in favor of the insured, with any doubts resolved in favor of the insured. If *any* allegation in the complaint is *even potentially* covered by the policy then the insurer has a duty to defend its insured." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) (internal citations omitted) (emphasis in original). If the petition potentially includes even one covered claim under the policy, the insurer must defend the entire lawsuit. *See Zurich Am. Ins. Co. v. Nokia, Inc.* 268 S.W.3d 487, 491 (Tex. 2008). The insured bears the initial burden to establish that a claim is potentially within the scope of the insurance coverage. *See Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). The eight corners rule focuses on the *facts* alleged in the complaint, rather than the legal theories, and considers these alleged facts (but *not* the legal theories) "without reference to their truth or falsity." *See Willbros RPI, Inc. v. Cont'l Cas. Co.,* 601 F.3d 306, 309 (5th Cir. 2010).

Because the duty to defend is triggered as long as the underlying claims are even potentially covered, Legacy argues that we may simply rely on the references to personal injury and property damage in the underlying complaint, and that we need not definitively address whether the factual allegations actually amount to "personal injury" or "property damage." Under Texas case law, however, those characterizations in the complaint amount to legal conclusions, rather than factual allegations. *See Nat'l Union Fire Ins. Co. of*

*Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (emphasizing that the eight corners rule focuses on "factual allegations that show the origin of the damages," not "legal theories" or causes of action); *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 425 (5th Cir. 2010) ("We need not accept [underlying plaintff]'s legal characterization, only its factual allegations. Indeed, whether or not [insured]'s alleged operations were professional in nature is the very question we must answer."). Such labels, then, do not relieve us of the need to construe the insurance contract in light of the complaint's allegations. Therefore, unless, as a matter of law, Ms. Alvarez's mental anguish is potentially within the scope of the contract's coverage for "personal injury," or the misuse of the organs and tissues is potentially within the scope of the contract's coverage for "property damage," there will be no duty to defend. Conversely, because the duty to defend is triggered for the entire underlying lawsuit if even one potentially covered claim is asserted in the underlying suit, if either of the above allegations is potentially within the scope of coverage, Evanston has a duty to defend the entire underlying lawsuit. *See Zurich*, 268 S.W.3d at 491.

**(1) Personal Injury**

Evanston argues on appeal that the extreme mental anguish alleged by Ms. Alvarez in the underlying complaint does not constitute a "personal injury" as defined in the insurance policy, and that Evanston therefore had no duty to defend Legacy based on this clause. The insurance policy's coverage for "personal injury" defines that term to mean "bodily injury, sickness, or disease including death resulting therefrom sustained by any person."

Evanston relies on the Texas Supreme Court's unanimous opinion in *Trinity Universal Insurance Company v. Cowan*, which held that an insurance

contract defining "bodily injury" as "bodily harm, sickness, or disease" did *not* include "purely emotional injuries...and unambiguously requires an injury to the physical structure of the human body."  945 S.W.2d 819, 823-24 (Tex 1997). Legacy counters that *Trinity* is not controlling here because that case dealt with the definition of an entirely different term– "bodily injury"– which arguably is generally recognized as being less broad than the term "personal injury."

The proper interpretation of "personal injury" under the instant insurance policy is not clear under existing Texas law.  On the one hand, the Texas Supreme Court in *Trinity* found that the "natural reading" of that definition– "bodily harm, sickness, or disease"– was to read "bodily" to modify all parts of the definition.  Because this case deals with a nearly identical definition– "bodily injury, sickness and disease"– it seems reasonable that the Texas Supreme Court's natural reading of the *Trinity* definition would apply here as well; under this reading, Ms. Alvarez's mental anguish would not, on its own, constitute "personal injury."  *See Trinity*, 945 S.W. at 824 (citing *E-Z Loader v. Travelers*, 726 P.2d 439 (Wash. 1986) (definition of "personal injury" in one policy and "bodily injury" in another, in each case excluded purely emotional injury from discrimination)).  Such a reading would not necessarily exclude coverage for mental anguish resulting from bodily injury.  *See  Knapp v. Eagle Property*, 54 F.3d 1272, 1284-85 (7th Cir. 1995) (*cited with approval in Trinity*, 945 S.W. at 824).

However, while the definitions at issue in this case and in *Trinity* are nearly identical, the term being defined is not.  It is reasonably possible that the Texas Supreme Court in *Trinity* found it natural to read "bodily" to modify each term of the definition because the very term being defined was "*bodily* harm."

11

No. 10-50267

In this case, on the other hand, the term "personal injury" was selected, so it may be less natural to read "bodily" to modify each term of the definition. Indeed, a reading of "personal injury" that encompasses more than simply physical harm seems to conform to the traditional notion under Texas law that personal injury, as opposed to bodily injury, includes claims for emotional distress. *See, e.g. Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003) ("When someone suffers personal injuries, the damages...include compensation for," among other things, "mental anguish...."). However, so far as we are aware the term "personal injury" has not been addressed by Texas appellate courts in the liability insurance coverage context.

Furthermore, "bodily injury," the defined term from *Trinity*, was made a component of the definition of "personal injury" in the instant policy. Substituting *Trinity*'s definition of "bodily injury"– of which the parties were presumably aware–for that component of the definition of "personal injury" in this case, it then becomes: "bodily harm, bodily sickness, bodily disease, sickness, or disease." Reading "bodily" to modify the final "sickness or disease" in this definition would render these terms surplusage, since they would then duplicate the definition of "bodily injury." Therefore, the "sickness or disease" in the policy here might be read to include mental and emotional maladies. However, such an interpretation may place too much weight on the selection of the term "bodily injury" rather than "bodily harm" as a component of the definition of "personal injury." *See Travelers v. Holloway*, 17 F.3d 113, 115 (5th Cir. 1994) (applying Texas law and addressing policy in which "bodily injury" is circularly defined as "bodily injury, sickness, or disease").

The question of whether the policy provisions covering "personal injury"

includes the mental anguish, unconnected to (and not resulting in) any physical malady, suffered by Ms. Alvarez, is a question of Texas law, determinative of the present suit:  If this question is answered in the affirmative, then Evanston owed Legacy a duty to defend the entire underlying suit, regardless of the resolution of the "property damage" issue.  As to this question of law there does not appear to be any controlling Texas Supreme Court precedent.

**(2) Property Damage**

Evanston also argues on appeal that the injuries alleged by Ms. Alvarez pertaining to the misuse of her deceased mother's bodily organs and tissues did not constitute "property damage" as defined in the insurance policy, and that Evanston therefore had no duty to defend Legacy based on this clause.  The insurance policy covers "property damage," defined therein as "physical injury to or destruction of tangible property, including consequential loss of use thereof, or loss of use of tangible property which has not been physically injured or destroyed."  Evanston's argument contends that this provision does not apply because a deceased human's body parts are not "tangible property."

Existing Texas case law has declined to extend full property rights in the bodies of decedents.  In *Burnette v. Surratt*, a Texas Court of Appeals opinion having the same force as an opinion of the Texas Supreme Court due to the refusal of a writ of error,[3] the court held that there is no property in a dead man's body, in the usually recognized sense of the word.  67 S.W.2d 1041, 1042

---

[3] Beginning on March 16, 1927, the notation "writ refused" indicates that the Texas Supreme Court found that the principles of law declared in the opinion of the court of appeals were correctly determined, and a decision in which the Texas Supreme Court refuses a writ of error is as binding as a decision of the Supreme Court itself.  *See* TEX. R. APP. P. 56.1(c); *United States v. Johnson*, 160 F.3d 1061, 1064 (5th Cir. 1998); *Britton v. Seale*, 81 F.3d 602, 603 n.2 (5th Cir. 1996).

No. 10-50267

(Tex. Civ. App.-Dallas 1934, writ ref'd).  Nevertheless, that court also held that a dead man's body "may be considered as a sort of quasi property, in which certain persons have rights therein, and have duties to perform." *Id.*  Other Texas courts had previously reached similar conclusions.  *See Foster v. Foster*, 220 S.W. 215, 218 (Tex. Civ. App.-Texarkana 1920, no writ) (finding no property right in the body of a deceased, but finding a privilege to control the place and manner of burial); *Gray v. State*, 114 S.W. 635, 641 (Tex. Crim. App. 1908) (finding no traditional property right in a dead body, but noting existence of certain rights including "the right to the possession of the body in the same condition in which death leaves it.").

The correct application of this Texas precedent to the facts before us is unclear for two reasons.  First, if Ms. Alvarez does possess some quasi property right in her mother's body and parts thereof, as *Burnette* indicates, it is unclear whether such a quasi property right would be sufficient to trigger Evanston's duty to defend Legacy under an insurance contract protecting against liability for loss of or damage to "tangible property."  Evanston argues that quasi-property is a legal fiction created by courts to allow some control over disposition of remains, and that quasi property is by definition *not* property, and certainly not *tangible* property.  While all parties concede that the organs and tissues are "tangible" in the sense that they can be touched and handled, Evanston nevertheless argues that the use of the modifier "tangible" in the insurance contract shows that the contract did not intend to encompass vague notions of quasi property.  However, it is unclear what work the modifier "tangible" does in this context, since quasi property rights can exist in tangible objects*, see, e.g. Burnette,* 67 S.W.2d at 1042 (quasi property right in body of decedent).  While

14

No. 10-50267

quasi property status may convey *some* of the rights generally associated with property, for example the right to dispose of the organs and tissues, it is unclear whether, as a matter of law, this insurance policy's "property damage" provision is triggered only by damage to objects for which the full bundle of property rights is available.

Second, it is unclear whether the Texas Supreme Court intended its refusal of property rights in dead human bodies to apply with equal force to body parts and organs in an organ donation context. This is particularly unclear since the Texas cases addressing the property status of dead bodies date from the pre-World War II era, long before advances in organ transplants and medical research began to challenge the common law view of refusing property rights in bodily organs, tissues, and cells. Some recent developments in Texas law may suggest that body organs, tissues, and cells do have some attributes of property. One Texas Court of Appeals case recently seemed to presume that an embryo is at least in some sense an item of property, in holding that individuals may validly enter into contracts about the future handling of the embryos. *See Roman v. Roman*, 193 S.W.3d 40, 49-50 (Tex. App.-Houston [1st Dist.] 2006; pet. denied). Also, the Texas Anatomical Gift Act, TEX. HEALTH & SAFETY CODE ANN. § 692A.009(a), grants next of kin the right to make "an anatomical gift of a decedent's body or part for the purpose of transplantation, therapy, research, or education." However, these developments may be more indicative of a growing consensus that quasi property rights, rather than full property rights, exist in body parts. As already discussed, it is unclear whether the existence of quasi property rights would be sufficient to trigger coverage in this insurance policy.

Outside of Texas, the question of whether body parts should be considered property has been addressed most squarely by the California Supreme Court in *Moore v. Regents of the University of California*, 793 P.2d 479 (Cal. 1990). Overturning the state court of appeals, the California Supreme Court held that cells in a research line should be considered objects "sui generis" and should not be "abandon[ed] to the general law of personal property." *Id.* at 489. However, in addition to *Moore*'s lack of precedential value in Texas, it is unclear whether the concerns voiced by the California Supreme Court about disturbing the progress of medical research would be implicated in this duty to defend case. *See id.* at 493-94. Furthermore, while the plaintiff in *Moore* had no expectation of retaining his cells once they were removed from his body, Ms. Alvarez did have some expectation of being able to control the disposition of her mother's bodily organs in this case. *See id.* at 489. Other out-of-state cases have also addressed the property status of body parts, with varying results. *See, e.g. Fuller v. Marx,* 724 F.2d 717, 719 (8th Cir. 1984) (stating that while there is a quasi-property right in a dead body under Arkansas law, "[w]e know of no Arkansas cases which extend this quasi-property right to all of the body's organs," but declining to rule on whether such an extension would be proper); *Wint v. Alabama Eye & Tissue Bank*, 675 So.2d 383 (Ala.1996) (deciding no conversion of decedent's eyes on grounds of lack of substantial evidence, but seeming to accept that eyes could be considered property for purposes of conversion claim).

In sum, current Texas law seems clear that full property rights do not exist in the body of a decedent. *See Burnette*, 67 S.W.2d at 1042. However, it is unclear whether this holding extends to the direct question presented here–whether alleged loss of use of human tissues, organs, bones, and body parts falls

No. 10-50267

within an insurance policy's definition of loss of use of "tangible property"– given the *Burnette* court's acknowledgment of certain quasi property rights and the long passage of time and developments in organ research and transplantation since that opinion was issued.  The question of whether the policy provisions covering "property damage" includes Ms. Alvarez's alleged deprivation of her mother's body parts is a question of Texas law, determinative of the present suit: If this question is answered in the affirmative, then Evanston owed Legacy a duty to defend the entire underlying suit, regardless of the resolution of the "personal injury" issue.

### (3) Cross-Appeals

The questions for which we are seeking certification from the Texas Supreme Court– whether Evanston had a duty to defend Legacy based on either the "personal injury" or "property damage" clauses of the insurance policy– are also dispositive in the resolution of Legacy's cross claims.  Here, we dispose of all other questions pertaining to the resolution of these claims.  While we address each of Legacy's six asserted errors in turn, we also note that Evanston has conceded that if a duty to defend is found, Legacy is entitled, as a matter of law, to all other relief sought, with the exception of certain fees incurred in the declaratory judgment counterclaim.

Legacy first argues that the district court erred by denying Legacy a judgment that Evanston breached the insurance contract.  If Evanston had a duty to defend, we agree that by breaching this duty, Evanston by definition breached the insurance contract.  *See, e.g. Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720 (5th Cir. 1999) (finding breach of contract due to failure to defend insured in underlying lawsuit); *Trammell Crow Residential Co.*

17

No. 10-50267

*v. Virginia Sur. Co.*, 643 F.Supp.2d 844, 856 (N.D. Tex. 2008) ("The court holds above that [insurer] had a duty to defend. [The insured] has therefore established beyond peradventure that, because [the insurer] refused to provide a defense, [the insurer] breached the Policy.").

Legacy's second point of error asserts that the district court erred by denying Legacy a judgment that Evanston violated Texas Insurance Code for Violation of Prompt Payment of Claims. If Evanston had a duty to defend, we agree that Evanston violated the Texas Insurance Code for Prompt Payment of Claims because it delayed payment of the claim by more than sixty days. *See* TEX. INS. CODE ANN. §§ 542.051-061. The Texas Supreme Court, on certification from the Fifth Circuit Court of Appeals, has clearly stated that the Chapter 542 rules dealing with the delayed payment of claims apply to an insurer's breach of the duty to defend. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 5 (Tex. 2007); *see also Lamar Homes, Inc. v. Mid Continent Cas. Co.*, 501 F.3d 435, 436 (5th Cir. 2007). The good faith of Evanston in believing it did not have a duty to defend, and the closeness of the legal question implicated here, are irrelevant to liability under Chapter 542. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997) (stressing that insurance companies take a risk when deciding to reject a claim).

Legacy's third point of error asserts that the district court erred by denying Legacy's request for a judgment ordering Evanston to pay Legacy's attorneys' fees and costs in the underlying lawsuit. If Evanston had a duty to defend, we agree that the district court abused its discretion in not awarding attorneys' fees to Legacy for the underlying lawsuit. *See Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 550 (5th Cir. 2003) (review for

18

No. 10-50267

abuse of discretion).  Attorneys' fees would be available under the federal Declaratory Judgment Act, because "controlling state substantive law permits such recovery." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 701 (5th Cir. 2009). Texas law recognizes that attorneys' fees and expenses incurred by an insured in an underlying lawsuit are damages produced by the insurer's breach of its duty to defend.  *See, e.g., United States Cas. Co. v. Schlein*, 338 F.2d 169, 175 (5th Cir. 1964) (finding that expenses "are the direct result of the impermissible abandonment of the Insurer's duty to defend and are therefore recoverable as a part of the Assured's damages").  Attorneys' fees would also be available based upon Texas contract law or the violation of Prompt Payment of Claims.  Because Evanston did not challenge the reasonableness or necessity of the sum alleged by Legacy in its March 16, 2010 Motion for Attorney Fees and Expenses (totaling $56,598.69), and because the uncontroverted evidence is "clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cast suspicion thereon," *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990), Legacy would be entitled to recover these costs incurred in the underlying suit.

Legacy's fourth point of error asserts that the district court erred in failing to assess eighteen percent interest on the claim for costs of the underlying lawsuit, pursuant to the Prompt Payment of Claims Act.  As discussed above, if there were a duty to defend, Evanston violated Texas Insurance Code Chapter 542 by delaying payment of the claim.  Chapter 542 makes it clear that, as a result of its violation, Evanston  must pay eighteen percent interest on the $56,598.69 of attorneys' fees and costs incurred in the underlying lawsuit. TEX. INS. CODE § 542.060(a).

19

No. 10-50267

Legacy's fifth point of error argues that the district court erred in denying Legacy a judgment requiring Evanston to pay Legacy's attorneys' fees and costs in the present lawsuit.  We agree that, if a duty to defend is found, Evanston must pay Legacy's attorneys' fees for the present lawsuit.  *See* TEX. INS. CODE § 542.060(a) ("If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy...reasonable attorney's fees.")  However, because Evanston has challenged the reasonableness of some of the fees asserted by Legacy for the present declaratory suit, in the event that the Texas Supreme Court finds that Evanston had a duty to defend, we would remand to the district court for determination of the proper sum.

Legacy's sixth and final point of error argues that the district court erred in dismissing, *sua sponte*, Legacy's counterclaims for breach of contract and violation of Texas Insurance Code for Prompt Payment of Claims.  As discussed above, if Evanston had a duty to defend, then Legacy has not only successfully stated a claim for breach of contract and violation of the Chapter 542 of the Texas Insurance Code, but is actually entitled to summary judgment on these claims.

In summary, if the Texas Supreme Court determines that Evanston did have a duty to defend based on either the "personal injury" or "property damage" provisions of the insurance policy, then we will: (1) reinstate Legacy's counterclaims for breach of contract and violation of the Texas Insurance Code for Prompt Payment of Claims; (2) render judgment that Evanston breached its contract wiht Legacy; (3) render judgment that Evanston violated the Texas Insurance Code for Prompt Payment of Claims; (4) render judgment that

20

No. 10-50267

Evanston must pay Legacy $56,598.69 as damages for Legacy's defense of the Underlying Lawsuit; (5) render judgment that Evanston must pay eighteen percent interest (to date of judgment) on the $56,598.69 pursuant to the Texas Insurance Code for Prompt Payment of Claims; and (6) remand to the district court for determination of reasonable attorneys' fees to be paid to Legacy in respect to litigating the present lawsuit and appeal. Conversely, if the Texas Supreme Court determines that Evanston did *not* have a duty to defend, none of the foregoing relief will be awarded Legacy.[4]

## IV. Questions Certified

We accordingly hereby certify the following two determinative questions of law to the Supreme Court of Texas. We note that either of these questions could be determinative of the outcome of this appeal, but that if one question is answered in the affirmative, the other will no longer be determinative of the instant appeal.

1. Does the insurance policy provision for coverage of "personal injury," defined therein as "bodily injury, sickness, or disease including death resulting therefrom sustained by any person," include coverage for mental anguish, unrelated to physical damage to or disease of the plaintiff's body?

2. Does the insurance policy provision for coverage of "property damage,"

---

[4]We observe that at oral argument before this court on January 31, 2011, counsel for Legacy for the first time advised this court that the underlying lawsuit had been settled in the "Fall" of 2010, pursuant to a "confidential agreement," and that the underlying suit had been dismissed and was no longer pending. No further information regarding the settlement (or the parties hereto, at least if there were any other than Legacy and the plaintiff in the underlying suit) has been furnished. We note that at no time during this appeal have any of the parties raised any issue about Evanston's duty to indemnify as distinct from (or in addition to) its duty to defend. When the briefs in this appeal were filed the underlying suit was still pending and no judgment had been entered therein.

No. 10-50267

defined therein as "physical injury to or destruction of tangible property, including consequential loss of use thereof, or loss of use of tangible property which has not been physically injured or destroyed," include coverage for the underlying plaintiff's loss of use of her deceased mother's tissues, organs, bones, and body parts?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.