**EVANSTON INSURANCE COMPANY, Appellant,**

v.

**LEGACY OF LIFE, INC., Appellee.**

No. 11–0519.

Supreme Court of Texas.

Argued Jan. 12, 2012.

Decided June 29, 2012.

378

Marc J. Wojciechowski, Wojciechowski & Associates, P.C., Spring, TX, for Appellant.

John C. Cave, Miguel Villarreal, Jr., Jason Edwin McKinnie, Gunn Lee & Cave PC, San Antonio, TX, for Appellee.

Justice GUZMAN delivered the opinion of the Court.

This case comes to us on two certified questions from the Fifth Circuit Court of Appeals. The certified questions arise from a suit filed by a daughter against an organ donation charity when she discovered that the charity—contrary to an earlier representation to her—would allegedly profit from harvesting her deceased mother's tissues. The charity requested a defense from its insurer and the insurer denied a defense. The insurer's subsequent suit against the charity resulted in the following certified questions from the Fifth Circuit Court of Appeals:

1. Does the insurance policy provision for coverage of "personal injury," defined therein as "bodily injury, sickness, or disease including death resulting therefrom sustained by any person," include coverage for mental anguish, unrelated to physical damage to or disease of the plaintiff's body?

2. Does the insurance policy provision for coverage of "property damage," defined therein as "physical injury to or destruction of tangible property, including consequential loss of use thereof, or loss of use of tangible property which has not been physically injured or destroyed," include coverage for the underlying plaintiff's loss of use of her deceased mother's tissues, organs, bones, and body parts?

*Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 751 (5th Cir.2011). We answer both questions in the negative.

## I. Factual Background

Legacy of Life, Inc. (Legacy) is an organ donation charity. Debra Alvarez consented for Legacy to harvest some of her terminally ill mother's tissues after she died. Alvarez alleges in her suit against Legacy that she only consented because Legacy represented the tissues would be distributed on a nonprofit basis but that Legacy instead transferred them to companies [1] that sold the tissues for a profit.[2] Alvarez brought various claims against Legacy, seeking compensatory damages, mental anguish damages, restitution, exemplary damages, and attorney's fees. Importantly, Alvarez did not allege that she or her mother suffered a physical injury. Instead, Alvarez alleged that her mother's estate as the legal and rightful owner of the remains was wrongfully deprived of them, causing restitution damages to the estate and mental anguish damages to Alvarez.

Legacy had a combined medical professional and general liability insurance policy through Evanston Insurance Company (Evanston). Legacy demanded that Evanston defend the Alvarez suit. *Evanston,*

---

1. Alvarez alleges that Tissue Transplant Technology Ltd. d/b/a Bone Bank Allografts and Live Cell Therapy Information, Inc. were the companies that sold the tissues at a profit. Alvarez alleges that Bone Bank Allografts and Legacy were closely related, sharing the same chief operating officer and quality assurance director and having almost identical addresses.

2. Two provisions in Texas law criminalize the sale of tissues, except for reasonable charges for such things as processing, transporting, and implanting. TEX. PEN.CODE § 48.02; TEX.

HEALTH & SAFETY CODE § 692A.016. Similar statutes have spawned recent litigation over the constitutionality of such laws. *See Flynn v. Holder*, 684 F.3d 852, 856–65 (9th Cir. 2012) (rejecting Equal Protection challenge to the National Organ Transplant Act as applied to bone marrow transplants by aspiration and holding that bone marrow transplants by apheresis are not subject to the Act's criminal penalties); *see generally* Eugene Volokh, *Medical Self–Defense, Prohibited Experimental Therapies, and Payment for Organs*, 120 HARV. L. REV. 1813 (2007). The validity of these statutes is not at issue in this proceeding.

645 F.3d at 741. Evanston denied the request and filed suit in federal court seeking a declaratory judgment that it had no duty to defend because Alvarez did not claim damages for personal injury or property damage. *Id.* at 742–43. Legacy counterclaimed, asserting various insurance claims and requesting a declaratory judgment in its favor. *Id.* at 743.

Evanston and Legacy both moved for summary judgment. *Id.* The district court granted Legacy's motion for partial summary judgment on the duty to defend and denied Evanston's motion for summary judgment. *Id.* The court entered a declaratory judgment that Evanston had a duty to defend, holding that personal injury covers extreme mental and emotional distress and that a Texas court could potentially find human tissues to be property. *Id.* Tellingly, the district court referred to the duty to defend question as "exceedingly close." *Id.* at 744. The Fifth Circuit certified the personal injury and property damage questions to this Court and noted that if Alvarez's claims involve either personal injury or property damage under the policy, Evanston has a duty to defend the entire Alvarez suit. *Id.* at 745, 751.

## II. The Duty to Defend

 When determining whether an insurer has a duty to defend, we follow the eight corners rule by looking at the four corners of the complaint for alleged facts that could possibly come within the scope of coverage in the four corners of the insurance policy. *GuideOne Elite Ins. v.* *Fielder Rd. Baptist Church,* 197 S.W.3d 305, 307 (Tex.2006). Our precedent favors insureds when examining both the complaint and the policy. As to the complaint, if it includes even one covered claim, the insurer must defend the entire suit.[3] *Zurich Am. Ins. Co. v. Nokia, Inc.,* 268 S.W.3d 487, 491 (Tex.2008). However, we only defer to a complaint's characterization of factual allegations, not legal theories or conclusions. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (per curiam). As to the policy, if a term is susceptible to more than one reasonable interpretation, we must resolve that uncertainty in favor of the insured. *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex.2006).

## III. Personal Injury

 With these principles in mind, we first determine whether Alvarez's suit seeks damages for personal injury under Legacy's policy with Evanston. Specifically, the first certified question asks: "Does the insurance policy provision for coverage of 'personal injury,' defined therein as 'bodily injury, sickness, or disease including death resulting therefrom sustained by any person,' include coverage for mental anguish, unrelated to physical damage to or disease of the plaintiff's body?" *Evanston,* 645 F.3d at 751. The policy defines "personal injury" as:

 (a) *bodily injury, sickness or disease including death resulting therefrom sustained by any person;*

---

**3.** Texas law provides:

 Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (per curiam).

(b) false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation, except when maliciously inflicted by, at the direction of, or with the consent or acquiescence of the insured;

(c) the publication or utterance of libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy except when maliciously published or uttered by, at the direction of, or with the consent or acquiescence of the insured. (emphasis added).

When an insurance policy defines its terms, those definitions control. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.1997). Legacy claims "bodily" only modifies "injury" and that Alvarez's mental anguish qualifies as sickness under the policy. Evanston maintains that "bodily" modifies "injury," "sickness" and "disease" and that an accompanying physical injury is required.

We agree with Evanston. In *Trinity*, we examined a homeowner's policy that defined "bodily injury" as "bodily harm, sickness or disease." *Id.* at 820. Even though Texas tort law allows recovery of mental anguish without any physical manifestations in some circumstances, we held that the policy in *Trinity* did not cover purely emotional injuries. *Id.* at 823. We explained that this interpretation gave effect to the commonly understood meaning

of "bodily," which implies a physical harm. *Id.*

■ Legacy argues that the *Trinity* policy defined "*bodily* injury," which is narrower than the term "*personal* injury" here. *Id.* at 820 (emphasis added). We disagree that this difference warrants a different outcome from that in *Trinity* for two reasons. First, the definitions in *Trinity* and the definition here are virtually identical.[4] If two policies have two different defined terms but similar definitions, we should afford them similar meanings. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex.2003) (deferring to contract definition to determine meaning of defined term that has a different definition in the common law). Second, relevant grammatical rules indicate that an adverb or adjective typically modifies all the words in a string that follow it and are separated by a disjunctive.[5] *See McIntyre v. Ramirez*, 109 S.W.3d 741, 746 (Tex.2003) (stating that "a straightforward reading of subsection (d) leads to the conclusion that the adverb 'ordinarily' modifies both the verb 'received' and the verb phrase 'be entitled to receive'"); *Osterberg v. Peca*, 12 S.W.3d 31, 38–39 (Tex.2000) (holding that "knowingly" applies to "makes" and "accepts" when they were separated by "or"). This rule certainly does not apply in all situations. As Legacy notes, the broader defined term "personal injury" could caution in favor of "bodily" not modifying all three nouns in subsection (a) here. However, subsections (b) and (c) of the definition of

---

4. Legacy's policy defines "personal injury" as "bodily *injury*, sickness or disease" and the policy in *Trinity* defined "bodily injury" as "bodily *harm*, sickness or disease." 945 S.W.2d at 822 (emphasis added).

5. Legacy asserts that there is syntactic ambiguity in whether "bodily" modifies all three nouns that follow, and that we should use the broader term "personal injury" to clarify that

ambiguity. However, as in *Trinity*, we do not find the phrase ambiguous. As addressed *infra*, the parties' choice of a broader defined term here than in *Trinity* reflects that they were including subsections (b)-(c) (for such things as malicious prosecution, libel and slander), not that they were broadening subsection (a) (bodily injury, sickness or disease).

personal injury explain here why "bodily"—as in *Trinity*—modifies the nouns that follow. Subsections (b)-(c) include types of personal injury that require no physical manifestation, such as malicious prosecution, libel and slander. The use of a broader term here (personal injury) than in *Trinity* (bodily injury) encompasses these additional types of injury, but it does not alter bodily injury, sickness or disease to allow for such injuries even without physical manifestations. In other words, the parties included injuries that require no physical manifestation in subsections (b)-(c), and essentially duplicated the definition from *Trinity* in subsection (a), which requires a physical manifestation. To encompass both categories, they selected the broader term "personal injury."

■ Here, Legacy maintains that Alvarez's injuries qualify as sickness or disease under subsection (a) of the definition of personal injury. Because "bodily" modifies injury, sickness, and disease in subsection (a), a physical manifestation is required for sickness or disease to be covered. Alvarez did not allege a physical injury. Therefore, her claims against Legacy do not trigger Evanston's duty to defend under the personal injury component of its policy. We answer the first certified question in the negative.

## IV. Property Damage

Legacy's policy also covered property damage. Accordingly, we must decide whether under that coverage provision Evanston is required to defend the Alvarez suit. The second certified question states:

Does the insurance policy provision for coverage of "property damage," defined therein as "physical injury to or destruction of tangible property, including consequential loss of use thereof, or loss of use of tangible property which has not been physically injured or destroyed," include coverage for the underlying plaintiff's loss of use of her deceased mother's tissues, organs, bones, and body parts?

*Evanston*, 645 F.3d at 751. Legacy's policy defines "property damage" as, *inter alia*, "loss of use of tangible property which has not been physically injured or destroyed." Evanston and Legacy agree that human tissues are tangible but disagree on whether they are property. The policy does not define property. Evanston contends that Texas common law and statutes have only recognized body parts as quasi property. Legacy counters that dictionaries define property as something that can be owned or possessed, and that body parts can be possessed.[6]

### A. Background

Legacy argues that we cannot look to the common law or statutes to determine the policy's meaning of property. We disagree. We have referred to property as a "bundle of rights." *See, e.g., Canyon Reg'l Water Auth. v. Guadalupe–Blanco River Auth.*, 258 S.W.3d 613, 618 (Tex.2008); *see also* Michael A. Heller, *The Tragedy of the Anticommons: Property in the Transition from Marx to Markets*, 111 Harv. L. Rev. 621, 666 (1998) (defining private property as a core bundle of rights). The "bundle of rights" concept is appropriate because property does not refer to a thing but rather to the rights between a person and

---

6. *See* Black's Law Dictionary 1232 (7th ed.1999) (defining "property" as "[t]he right to possess, use, and enjoy a determinate thing (either a tract of land or a chattel)"); Merriam–Webster Online Dictionary, at http:// www.merriam-webster.com/dictionary/ property (last visited June 26, 2012) (defining "property" as "something owned or possessed") (all internet materials on file with Clerk's office).

a thing. JESSE DUKEMINIER & JAMES KRIER, PROPERTY 86 (3d ed. 1993) ("For lawyers, if not lay people, property is an abstraction. It refers not to things, material or otherwise, but to rights or relationships among people with respect to things."). The designation of an object as tangible property means that it has acquired sufficient rights to be recognized as property under the law. *See Heller*, 111 HARV. L. REV. at 666–67 (stating that "ownership of private property includes the possibility that an individual can control all or most of the core bundle"). As the common law and statutes define these rights, it is appropriate to review them to determine if an object has sufficient rights to achieve the status of tangible property.

Some scholars have observed that there are eleven core rights in the bundle of property rights:

(1) the right to exclusive possession;
(2) the right to personal use and enjoyment;
(3) the right to manage use by others;
(4) the right to the income from use by others;
(5) the right to the capital value, including alienation, consumption, waste, or destruction;
(6) the right to security (that is, immunity from expropriation);
(7) the power of transmissibility by gift, devise, or descent;
(8) the lack of any term on these rights;
(9) the duty to refrain from using the object in ways that harm others;
(10) the liability to execution for repayment of debts; and
(11) residual rights on the reversion of lapsed ownership rights held by others.

*Id.* at 663 n. 187 (citing A.M. Honoré, *Ownership*, in OXFORD ESSAYS IN JURISPRU-DENCE 107, 112–28 (A.G. Guest ed., 1961)). Many jurisdictions use variations of these rights to form the notion of "fee simple" ownership of real property. *Id.* at 663. Some of the key rights in American jurisprudence that make up the bundle of property rights include the rights to possess, use, transfer and exclude others. *Kaiser Aetna v. United States*, 444 U.S. 164, 176, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945). We have never required a person to possess the full, unfettered bundle of property rights for a thing to be classified as their property. *See Canyon Reg'l Water Auth.*, 258 S.W.3d at 617 ("[W]here an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking." (alteration in original) (quoting *Tahoe—Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 327, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002))).

Historically, the bodies of deceased persons (and necessarily the human tissues they contain) have held a unique status in the law. Under the English common law, "a dead body is not the subject of property," although next of kin have a right to possess the body of a deceased person to bury it. *Regina v. Price*, 12 Q.B.D. 247, 252–54 (1884). In this respect, Texas common law has largely tracked English common law. Long ago, we recognized that next of kin have only quasi-property rights in the body of a deceased person: "[t]here is no property in a dead man's body, in the usually recognized sense of the word, yet it may be considered a sort of quasi property, in which certain persons have rights therein and have duties to perform," such as the right of possession and control of the burial. *Burnett v. Surratt*, 67 S.W.2d 1041, 1042 (Tex.Civ.App.-Dallas 1934, writ

ref'd).[7] As our sister court in Colorado correctly explained:

> Historically, the notion of a quasi-property right arose to facilitate recovery for the negligent mishandling of a dead body. If the plaintiff could show that his property right had been harmed, he would avoid the burden of proving that his emotional distress was accompanied by physical injury.... In reality, however, the primary concern of the right is not the injury to the dead body itself, but whether the improper actions caused emotional or physical pain or suffering to surviving family members. The injury is seldom pecuniary; rather, damages are grounded in the mental and physical injuries of survivors.

*Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 880 (Colo.1994).

Medical science has undisputedly progressed significantly since we classified bodies as quasi property to the next of kin in 1934. Doctors have been transplanting kidneys for over 55 years.[8] Living persons can now donate a portion of their liver, pancreas, lung, or intestine.[9] Deceased individuals can donate numerous parts of their bodies.[10] A newborn's umbilical cord blood can be cryogenically frozen for use in future transplants.[11]

Our Legislature, in prescient recognition of the rapid progress of medical science, expanded the common-law quasi-property rights of next of kin with the Revised Uniform Anatomical Gift Act (Anatomical Gift Act), granting next of kin the right to make "an anatomical gift of a decedent's body or part for the purpose of transplantation, therapy, research, or education." TEX. HEALTH & SAFETY CODE § 692A.009(a). The Anatomical Gift Act also sets forth the procedure for making an anatomical gift before death, *id.* at §§ 692A.004–006, and restricts the purposes for selling tissues (to transplantation, therapy, research, or education) and the fees that may be collected (to a reasonable amount for certain services performed), *id.* at §§ 692A.004, 692A.016.[12]

---

7. *See also Gray v. State*, 55 Tex.Crim. 90, 114 S.W. 635, 641 (1908) (stating that "[a]t common law there can be no property in a dead human body; and after burial of such dead body it becomes a part and parcel of the ground to which it was committed. Nevertheless, the authorities hold the right to bury a corpse and preserve its remains is a legal right which the courts will recognize and protect. While the body is not property in the usually recognized sense of the word, yet it may be considered as a sort of quasi property, to which certain persons may have rights, as they have duties to perform toward it, and the right to dispose of a corpse by decent sepulture includes the right to the possession of the body in the same condition in which death leaves it" (quotation marks omitted)); *Foster v. Foster*, 220 S.W. 215, 218 (Tex.Civ.App.-Texarkana 1920, no writ) (stating that widow "had no property right in the body of her husband. The law accords her the privilege of controlling the place and manner of burial in deference to the sentiments which are presumed to attend the relations of husband and wife").

8. Nicholas Bakalar, *First Mention: Kidney Transplant*, N.Y. TIMES (July 27, 2009), *available at* http://www.nytimes.com/2009/07/28/health/28first.html.

9. *Living Donation Q & A*, TRANSPLANT LIVING, http://www.transplantliving.org/living donation/questions.%!Faspx (last visited June 27, 2012).

10. *Which Tissue Can Be Donated and How Is It Used?*, UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER SCHOOL OF MEDICINE AT SAN ANTONIO (June 30, 2011), http://www.uthscsa.edu/allograft/tissue.asp.

11. *FAQs: Benefits of Banking Cord Blood & Tissue*, CORD BLOOD REGISTRY, http://www.cord blood.com/en/benefits-cord-blood/cord-blood-faqs (last visited June 27, 2012).

12. *See also* TEX PEN.CODE § 48.02(b) (criminalizing the buying and selling of human organs). However, the Anatomical Gift Act grants the right to charge a reasonable

## B. Application to Alvarez's Claims

However, before we can use this legal framework to assess whether the tissues at issue here are property, we must first determine whose property the tissues are alleged to be. The answer to that question may be dispositive. Legacy's policy covers loss of use of tangible property. Alvarez is suing because either she or her mother's estate lost use of the tissues. Accordingly, whether the tissues were property to an unrelated third party like Legacy—a party whose interest is commercial, not personal—is not a question we must answer here. We therefore express no opinion on that issue and leave that question for another day. Here, Alvarez seeks damages both for herself and for her mother's estate for the loss of use of her mother's tissues.[13] Therefore, we determine whether Alvarez or her mother's estate's claims for loss of use of the tissues are claims for loss of use of tangible property.[14]

With this legal framework in mind, we first assess whether Alvarez's mother's tissues are Alvarez's property. The common law gives Alvarez the right to direct the burial, which we have called a quasi-property right. *Burnett*, 67 S.W.2d at 1042. The common law also allows next of kin to sue for mental anguish damages when acts are performed on a decedent's body or tissues without the next of kin's consent in certain circumstances. *See Service Corp.* *Int'l v. Guerra*, 348 S.W.3d 221, 231 (Tex. 2011). In recognition of the many advances in medical science discussed above and the ability to transplant tissues, the Anatomical Gift Act also gives next of kin the right to gift tissues. TEX. HEALTH & SAFETY CODE § 692A.009(a).

■ Despite these rights Alvarez has in her deceased mother's tissues, there are many rights Alvarez does not have. Some of the key rights that make up the bundle of property rights include the rights to possess, use, transfer, and exclude others. *Kaiser Aetna*, 444 U.S. at 176, 100 S.Ct. 383; *Gen. Motors Corp.*, 323 U.S. at 378, 65 S.Ct. 357. Next of kin have no right to possess a body other than for burial or final disposition. *Burnett*, 67 S.W.2d at 1042. Next of kin have no right to use tissues unless they have been designated by the individual as a transplant recipient. TEX. HEALTH & SAFETY CODE § 692A.011(a)(3). Next of kin have no right to transfer tissues other than as set forth in the Anatomical Gift Act. *Id.* §§ 692A.009, 692A.011. And next of kin have no right to exclude, other than to seek damages in certain circumstances for acts done beyond their consent. *Guerra*, 348 S.W.3d at 231. In light of these limited rights, we cannot say that tissues have attained the status of property of the next of kin.[15]

---

amount for the removal, processing, preservation, quality control, storage, transportation, implantation, or disposal of human tissues. TEX. HEALTH & SAFETY CODE § 692A.016(b).

13. Alvarez's suit is styled as being on behalf of her mother, and states that her mother's estate "is the rightful and legal owner of her remains." However, Alvarez also seeks damages for emotional distress based on misrepresentations allegedly made to her. While it is unclear whether these emotional distress damages are allegedly due to loss of use of her mother's tissues, we must resolve doubts

in favor of coverage. *Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d at 141.

14. Alvarez cannot trigger Evanston's duty to defend by simply alleging the tissues were her property even if they were not. Whether the tissues are property is a legal conclusion, and we defer only to factual allegations in a complaint when examining the duty to defend. *Nat'l Union*, 939 S.W.2d at 141.

15. Our holding is consistent with the majority view that tissues are, at most, quasi property of the next of kin. *See, e.g., Boorman v. Nev.*

Legacy asserts that two courts of appeals, *Roman v. Roman*, 193 S.W.3d 40, 43 (Tex.App.-Houston [1st Dist.] 2006, pet. denied), and *Terrill v. Harbin*, 376 S.W.2d 945, 947 (Tex.Civ.App.-Eastland 1964, writ. dism'd), have concluded that tissues are property. We disagree with Legacy's characterization of those holdings. *Roman* involved frozen embryos. 193 S.W.3d at 49. The court of appeals only decided that agreements regarding the disposition of frozen embryos before cryopreservation do not violate public policy. *Id.* at 50. It did not decide whether embryos are in fact property.

■ In *Terrill*, a widow sued a doctor who performed an autopsy on her deceased husband's body against her will. 376 S.W.2d at 945. The *Terrill* Court determined that venue in the lower court was proper because the autopsy interfered with the widow's right to possession of the body. *Id.* at 947. In doing so, the court noted,

> The right to bury a corpse and preserve its remains is a legal right which is well recognized, and it is held that the courts will protect such right and the right to dispose of a corpse by a decent burial which includes the right to possession of the body in the same condition in which death leaves it. It is also held that a widow has the primary and paramount right to the possession of her husband's body above that of any other person. Any interference with such right of possession of the body of a deceased by mutilation or otherwise disturbing the body without the consent of the next of

kin is an actionable wrong for which a claim for damages may be maintained. *Id.* (citations omitted). The court was affirming our statement in *Burnett* that next of kin had a right to possess a body and direct the burial, noting that next of kin may sue for damages if someone interferes with that right. *Id.* Today, we reaffirm our holding in *Burnett* that tissues are quasi property of the next of kin but they are not the property of the next of kin.

We next decide whether the mother's tissues are the property of her estate. The Anatomical Gift Act gives an individual the right to designate a recipient of their tissues while they are alive and gives their agent at the time of death the right to designate a recipient immediately before their death. TEX. HEALTH & SAFETY CODE §§ 692A.005, 692A.009(a)(1). The Anatomical Gift Act does not give the estate the right to designate a recipient once the individual dies. *See id.* § 692A.009(a) (not listing estate or agent as having authority to designate recipient after death). Nor can the estate be compensated financially for the individual's tissues. The Anatomical Gift Act only allows a person to charge a reasonable amount for certain services rendered (such as removal and processing). *Id.* § 692A.016(b). The Act does not allow for compensation for the tissue itself. *Id.* § 692A.016(a) (creating an offense if a person knowingly purchases or sells tissue); *see also* TEX. PEN.CODE § 48.02(b) (criminalizing the buying and selling of human organs). In sum, the individual can designate a recipient for their tissues before their death, but once they die, their estate cannot designate a

*Mem'l Cremation Soc'y, Inc.*, 236 P.3d 4, 10 (Nev.2010) (rejecting claim for conversion of a decedent's body); *Moore v. Regents of the Univ. of Cal.*, 51 Cal.3d 120, 271 Cal.Rptr. 146, 793 P.2d 479, 489 (1990) (rejecting claim for conversion of tissues because plaintiff had neither title nor possession of the tissues);

*Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo.1994) (refusing to recognize tissues as property to support a claim for conversion). In fact, we are unaware of any court holding that tissues are the property of the next of kin in the ordinary sense.

recipient or receive compensation for the tissues. The estate therefore has fewer rights in tissues than next of kin, who may designate a recipient once the individual dies. *Id.* § 692A.009(a). Because we have held that tissues are not the property of next of kin, we necessarily conclude that tissues are also not the property of the estate. We answer the second certified question in the negative.

## V. Conclusion

We hold that the insurance policy's definition of "personal injury" does not include mental anguish, unrelated to physical damage to or disease of the daughter's body. We also hold that loss of use of tangible property does not include the loss of use of the mother's tissues by Alvarez or her mother's estate. We answer both certified questions in the negative.