# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-25-00214-CV

---

**Agnieszka Karolina Schvartz-Poludniewska, Appellant**

**v.**

**Clement Schvartz, Appellee**

---

**FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-FM-23-002452, THE HONORABLE GARY HARGER, JUDGE PRESIDING**

---

### D I S S E N T I N G   O P I N I O N

Relying on § 109.002(c) of the Family Code,[1] Mother asks us to suspend and stay the property division effected in the trial court's divorce decree. I agree with the Court that this statute grants us discretion to stay portions of a SAPCR order upon "a proper showing" by the movant. However, because I do not agree that § 109.002(c) contemplates staying the specific provisions of the Decree at issue or that Mother has made "a proper showing," I would deny her motion in full. Thus, I respectfully dissent in part.

The history of § 109.002 demonstrates its use is and should be limited to suspending orders concerning the custody and conservatorship of children. *See Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023) (explaining that statutory history, or "the statutes repealed or

---

[1] Mother also cites Rule 52.10(a) of appellate procedure, relating to temporary relief in original proceedings. *See* Tex. R. App. P. 52.10(a). The Court does not address this rule, almost certainly because it is entirely inapplicable to this case, which is not an original proceeding.

1

amended by the statute under consideration,' which 'form part of the context of the statute'" is "probative and sometimes indispensable in statutory interpretation").

For most of the first half of the twentieth century, child custody orders in Texas were treated like any other final order and could be suspended through the filing of a supersedeas bond. *See Ex parte Wrather*, 161 S.W.2d 774, 775 (Tex. 1942) (orig. proceeding). But this became untenable; caregivers could ignore court orders that were designed to protect children from harm simply by posting a supersedeas bond and filing a notice of appeal. *See, e.g.*, *Oldfield v. Lester*, 188 S.W.2d 982, 982–83 (Tex. 1945) (orig. proceeding) (although a jury decided the child was better off in the care of an orphanage than with relators, relators should have been allowed to suspend the operation of that order by requesting the trial judge to fix the amount of a supersedeas bond).

In 1946, recognizing the important distinctions between judgments involving money or property and judgments involving children, the Texas Supreme Court amended the rules of civil procedure

> to include a subdivision providing that when an appeal is from a judgment involving care or custody of a child, a supersedeas bond will not have the effect of suspending the judgment as to care or custody of the child unless so ordered by the trial court. Additionally, the appellate court, upon a proper showing, may permit the judgment to be suspended. This provision has been carried forward in rule 364(g) and was incorporated into section 11.19(c) when the Family Code was enacted.

*Martin v. O'Donnell*, 690 S.W.2d 75, 77 (Tex. App.—Dallas 1985, no writ); *Harris v. Tucker*, 241 S.W.2d 304, 305 (Tex. App.—Waco 1951, no writ) ("By referring to Rule 364, TRCP, it will be noted that the Supreme Court amended this rule by adding subdivision (f) thereto on February 1, 1946, within less than six months after it had decided the case of Oldfield v. Lester . . . .");

2

Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 11.19, 1973 Tex. Gen. Laws 1411, 1419–20 (amended 1995) (current version at Tex. Fam. Code § 109.002).

And "Section 11.19 extended and expanded the authority of the trial court and the appellate court to suspend the judgment with reference to support payments, as well as to conservatorship orders." *Morris v. Morris*, 654 S.W.2d 789, 791 (Tex. App.—Tyler 1983, no writ). Section 11.19(c) was then recodified with no changes as § 109.002(c) in 1995. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 109.002, 1995 Tex. Gen. Laws 113, 137; *In re Taylor*, 39 S.W.3d 406, 411 n.3 (Tex. App.—Waco 2001, orig. proceeding). But at no point in its history has § 109.002(c) expanded to encompass suspension of a trial court's property division in a divorce decree.

That is because property divisions in divorce decrees have received their own unique treatment. In 1985, a law passed permitting the trial court to enter temporary orders pending appeal to protect the parties and their property. Act of May 2, 1985, 69th Leg., R.S., ch 115, § 1, 1985 Tex. Gen. Laws 559, 560 (amended 1997) (current version at Tex. Fam. Code § 6.709). "In addition to other matters," trial courts may now "**award one spouse exclusive occupancy of the parties' residence pending the appeal**." Tex. Fam. Code § 6.709(a)(4) (emphasis added). This is so even if the trial court awarded the other spouse exclusive occupancy of the residence in its original property division. *Id.* § 6.709(f); *cf. Fuentes v. Zaragoza*, 555 S.W.3d 141, 152 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (detailing that the trial court's property division awarded "exclusive use of certain properties" to one spouse over the other).

But, of course, in its temporary orders, the trial court must still "take[] reasonable steps to ensure that the party awarded property in the trial court's property division is protected from the other party's dissipation or transfer of that property." *Id.* § 6.709(c). And in ensuring

this protection, the trial court may "set [an] appropriate amount of security, taking into consideration . . . the amount of security that the other party would otherwise have to provide by law if relief under Subsection (a) was not granted." *Id.* § 6.709(e); *see* Tex. R. App. P. 24.2 (providing that "[w]hen the judgment is for the recovery of an interest in real . . . property," the amount of security set by the trial court must be at least "the value of the property interest's rent or revenue"). A trial court retains jurisdiction to enforce any temporary order issued under that statute "unless the appellate court, on a proper showing, supersedes the court's order." Tex. Fam. Code § 6.709(j).

But unlike § 109.002 which does not impose an explicit deadline, § 6.709 requires a party seeking to stay the division of property in a divorce decree to bring their motion below no later than "the date by which that party is required to file the party's notice of appeal under the Texas Rules of Appellate Procedure." *Compare id.* § 109.002, *with id.* § 6.709(h). The motion the Court rules on now was filed over a month after Mother filed her notice of appeal,[2] and we have not been informed that Mother ever sought temporary orders below pursuant to § 6.709 to enjoy "**exclusive occupancy of the parties' residence pending the appeal**." *See id.* § 6.709(a)(4) (emphasis added).

Nevertheless, operating under the auspices of § 109.002(c), the Court now gives Mother the § 6.709 hearing she never requested, preemptively granting her relief that the trial court might have otherwise denied her. The Court cites *In re A.B.*, and *Nixon v. Attorney General of Texas* to support its proposition that "[a]ppellate courts have found a 'proper showing'" under

---

[2] Mother's notice of appeal was premature. *See* Tex. R. App. P. 27.1(a). On March 21, 2025, the trial court signed the Decree requiring Mother to move out of the residence by April 23, 2025. Mother filed her "Emergency Motion to Stay" two days before that deadline, on April 21, 2025.

4

§ 109.002(c) "to include avoidance of disrupting the current living arrangements for a child pending appeal." *See In re A.B.*, No. 12-22-00303-CV, 2022 WL 17685743, at *4 (Tex. App.—Tyler Dec. 14, 2022, orig. proceeding) (mem. op.) (collecting cases); *Nixon v. Attorney Gen. of Tex.*, No. 05-17-01080-CV, 2018 WL 2126823, at *2 (Tex. App.—Dallas May 8, 2018, mand. denied) (mem. op.) (same). It should be noted that the phrase "living arrangements" is purely a creature of judicial creation and appears nowhere in the statute itself. *See* Tex. Fam. Code § 109.002(c).

But regardless, the context of the phrase as it is used in those cases demonstrates its meaning is inapplicable here. *See Panhandle & S. F. Ry. Co. v. Friend*, 91 S.W.2d 922, 927 (Tex. App.—Austin 1936, no writ) ("[W]hat the court says must be construed in the light of and in reference to the specific question before it for decision . . . .").

First, notably, neither court granted the relief sought in either *A.B.* or *Nixon*. *See In re A.B.*, 2022 WL 17685743, at *4; *Nixon*, 2018 WL 2126823, at *2 (declining to suspend portions of the trial court's judgment dealing with child support because "appellant has not made a proper showing"). And in *A.B.*, the discussion of § 109.002(c) was dictum, as there was no § 109.002(c) motion pending before it. *See In re A.B.*, 2022 WL 17685743, at *4 (providing that mandamus was not the only way relator could seek a stay of the SAPCR order and citing § 109.002(c) as a potential alternative); *see also Seger v. Yorkshire Ins.*, 503 S.W.3d 388, 399 (Tex. 2016) ("This Court has defined dictum as: 'An opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication; . . . an opinion of a judge which does not embody the resolution or determination of the court, and made without argument, or full consideration of the point.'" (quoting *Grigsby v. Reib*, 153 S.W. 1124, 1126 (Tex. 1913)).

Both *A.B.* and *Nixon* were citing and summarizing the holdings of *other* cases for the general proposition that § 109.002(c) may be used to suspend the enforcement of a SAPCR order that impacts a child's "living arrangements." *In re A.B.*, 2022 WL 17685743, at \*4; *Nixon*, 2018 WL 2126823, at \*1. And those other cases all dealt with the suspension of SAPCR provisions involving custody and conservatorship—what § 109.002(c) was designed for—not the suspension of the trial court's confirmation of a spouse's separate property—what § 6.709 was designed for. *See Marquez v. Marquez*, No. 08-12-00129-CV, 2012 WL 1555204, at \*2 (Tex. App.—El Paso May 2, 2012, no pet.) (mem. op.) (per curiam) (staying judgment that increased father's limited unsupervised visitation to extended standard possession); *Wiese v. AlBakry*, No. 03-14-00799-CV, 2015 WL 1315890, at \*1 (Tex. App.—Austin Mar. 20, 2015, order) (per curiam) (suspending operation of trial court's SAPCR order "to the extent it now permits international travel" with the children); *In re R.H. M.*, No. 03-14-00603-CV, 2014 WL 4966543, at \*1 (Tex. App.—Austin Oct. 3, 2014, order) (per curiam) (suspending operation of court's modification order that changed party with "exclusive right to designate the primary residence of" the child).

Perhaps because of the statute's origins, historically, the intermediate courts of appeals have interpreted § 109.002(c) narrowly, only suspending the trial court's SAPCR orders when necessary to protect children from harm. *See, e.g.*, *McGee v. Ponthieu*, 634 S.W.2d 780, 782 (Tex. App.—Amarillo 1982, no writ) ("Necessarily, then, the requirement of a proper showing [under § 109.002(c)'s predecessor] obligates a relator to demonstrate that the trial court clearly abused its discretion in refusing to suspend its judgment on presentation of essentially the same matters offered to the appellate court."); *Harris v. Tucker*, 241 S.W.2d 304, 306 (Tex. App.—Waco 1951, no writ) ("Furthermore, from the entire record before us we cannot say it would be to the best interest of this boy to require his grandmother to return his custody to relators at this time,

6

even though we had the judicial power, upon proper showing and request, to do so."); *cf. In re Marriage of Bentrott*, No. 07-23-00363-CV, 2024 WL 837927, at *2 (Tex. App.—Amarillo Feb. 15, 2024, order) (per curiam) ("Rule 24.2(4) discourages suspension of conservatorship and custody of minor children except that an appellate court may do so 'upon a proper showing.'").

As far as I am aware, no court has done what this Court does now—suspend the operation of the trial court's *property division* under § 109.002(c) because the children might be impacted by it. And as this Court recognizes, Mother "has not directed us to any authority that applies Section 109.002(c) to carry out what amounts to a suspension of a divorce judgment's property division." *Supra*, at 8.[3]

---

[3] Despite the Court's acknowledgment that no authority supports using § 109.002(c) to suspend a trial court's property division, it nonetheless assumes we can use it in this manner so long as a party makes a "proper showing." *See Supra*, at 8 ("[W]e believe that a 'proper showing' under Section 109.002(c) to obtain an order from an appellate court suspending a divorce decree's property division . . . requires at least substantially the same showing by the moving party as what is required under Section 6.709."). Section 6.709 allows *the trial court* to enter temporary orders "as considered equitable and necessary for the preservation of the property and for the protection of the parties during an appeal." Tex. Fam. Code § 6.709(a). We may review those orders or supersede them "on a proper showing," but § 6.709 does not give us the authority to enter those orders ourselves. *See id.* § 6.709(j), (l).

Similarly, § 109.001—the SAPCR analogue of § 6.709—allows the trial court to enter any temporary orders "necessary to preserve and protect the safety and welfare of the child during the pendency of an appeal as the court may deem necessary and equitable." *Id.* § 109.001(a). We may also suspend those temporary orders "on a proper showing." *Id.* § 109.001(b-3). But unlike § 109.002(c) which allows us to suspend the trial court's SAPCR orders even in the absence of a § 109.001 hearing, no similar provision permits us to suspend the trial court's division of property absent a § 6.709 hearing.

Rather than allow the trial court to retain control over its division of property, this Court is attempting to shoehorn the "best interest of the children" standard into a § 6.709 suspension of property, to allow our intervention whenever we think necessary. I would not read the Family Code's silence on the matter as granting us authority that § 6.709 clearly vests in the trial court. *Cf. Grossnickle v. Grossnickle*, 935 S.W.2d 830, 850 n.16 (Tex. App.—Texarkana 1996, writ denied) (stating under Section 6.709's predecessor that "[t]he trial court is in a better position than the appellate court to provide for the preservation of the property and the protection of the parties when needed, because the trial court can take testimony concerning the need for such orders").

7

The Court appears to believe that awarding Mother the right to use and possess the property is not the same as invading the trial court's property division. But in Texas, "property does not refer to a thing but rather to the rights between a person and that thing." *Evanston Ins. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83 (Tex. 2012). Thus, the trial court's division of property in a divorce refers to the division of ownership rights associated with that property. "Some of the key rights in American jurisprudence that make up the bundle of property rights include the right to possess, use, transfer, and exclude others." *Id.* at 383. And specifically, the "right of individuals to use their own property as they wish remains one of the most fundamental rights that individual property owners possess." *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 280 (Tex. 2018); *Spann v. City of Dallas*, 235 S.W. 513, 515 (Tex. 1921) (orig, proceeding) ("If the right of use be denied, the value of property is annihilated and ownership rendered a barren right."). Here, by confirming the property as Father's separate property, the trial court awarded Father the entire panoply of rights a property owner may have. By contrast, by granting Mother the exclusive right to use and possess the property, this Court divests Father of the most "fundamental" of those rights. *See Tarr*, 556 S.W.3d at 280.

Complicating matters is the fact that this residence is ostensibly Mother's homestead. "The State of Texas famously recognizes one of the broadest homestead exemptions in the United States." *Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 595 (Tex. App.—Dallas 2009, no pet.). So important is the individual's interest in their homestead in Texas that, "if a property serves as the family's homestead, a spouse has vested rights even when that homestead is the other spouse's *separate* property." *Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 534 (Tex. 2023). Indeed, "[t]he homestead character of property is not destroyed even by divorce, if one of the parties to the divorce continues to maintain the property as a proper homestead." *United*

*States v. Rodgers*, 461 U.S. 677, 685 n.10 (1983) (first citing *Renaldo v. Bank of San Antonio*, 630 S.W.2d 638, 639 (Tex. 1982); and then citing *Wierzchula v. Werzchula*, 623 S.W.2d 730, 732 (Tex. App.—Houston [1st Dist.] 1981, no writ)). The interest an individual holds in her homestead "is analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant so long as the property retains its homestead character." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991). And the homestead interest "is a community interest which the court may award either party" in a divorce, even if the homestead is the separate property of one spouse. *LeBlanc v. LeBlanc*, 761 S.W.2d 450, 452–53 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied). By ordering Mother to vacate the premises, the trial court divided the community's interest in the homestead. And this Court, by its stay order allowing Mother to retain her homestead interest, reverses that discretionary division. *But see McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex. 1976) ("When the court of civil appeals rendered specific awards of property, it was in effect substituting its determination of 'just and right' for the trial court's determination. . . . The court of civil appeals in so rendering was infringing upon the trial court's discretion . . . ." (internal citations omitted)).

Even if the Court is correct in reading § 109.002(c) as broadly granting us the discretion to suspend any portion of the trial court's judgment, I am not convinced we should exercise that discretion here. The Court has accurately laid out Mother's perspective on the current state of things. But Father sees things differently. According to him, the oldest child will be graduating high school in December. The middle child will be attending private school in Europe beginning in the fall. In other words, in all likelihood, for the vast majority of time this appeal is pending, it will be just Mother and the youngest child residing in Father's separate property residence in Austin, which is a five-bedroom house with a pool and cabana. And since the youngest

9

child attends the private school of Father's choosing, Mother is not zoned to any specific neighborhood and can choose to live anywhere she wishes, provided it fits within the geographic restriction in the Decree of "Travis County, Texas, Williamson County, Texas, anywhere within the European Union, the United Kingdom, Switzerland[,] or Poland."

Father also represents that allowing Mother to remain in the home means he will have no place to live when he comes to visit the children. He argues that he will miss out on rental income of about $15,000 per week. Mother represents the rental value of the property is only $8,400 per month. However, Mother provides no valid explanation as to why she cannot find another home within her budget that is suitable to meet the children's needs, especially when she currently receives a combined $8,472 per month from Father in child support and spousal maintenance—not to mention the business, bank accounts, and residence in Paris, France that were confirmed in the decree as her separate property. "[I]nconvenience and expense," even that which impacts the child, does not constitute "a proper showing" justifying court intervention. *See Hays v. Brandon*, 245 S.W.2d 381, 382 (Tex. App.—Fort Worth 1951, no writ).

And it is the children's needs we must focus on, not Mother's. *See Smith v. Texas Dep't of Protective & Regul. Servs.*, 160 S.W.3d 673, 682 (Tex. App.—Austin 2005, no pet.) ("[I]n determining [the] best interest of the child, a court should focus on the interest of the child, not the needs or desires of the parent."). Although her parenting coach has opined that a move may affect Mother's and the children's stability, Father points out that the parenting coach has *never met* the children. The Court perhaps assumes that a move would be harmful to the children. And, to be sure, moves can be destabilizing for children. But a move could also help the children come to terms with their parents' divorce, or make new friends, or allow the youngest child to live closer to the school she will attend in the fall.

As the Court recognizes, the trial court initially was inclined to allow Mother to live in the residence during the pendency of the appeal but then, after a hearing on the matter, the trial court, in its discretion, thought better of that decision. Why did the trial court change course? Was it convinced that a move was, in fact, in the best interest of the children?

At this juncture, there is nothing in the record to indicate why the trial court changed its mind. We have Father's representations of the facts and Mother's representations of the facts. We should not be the arbiter of which representation is the correct one. If we are staying the trial court's judgment out of concern for the children's needs, then there should at least be some evidence before us about their current needs and how staying the court's order may impact them. And notwithstanding the letter from the parenting coach that does not appear to have been before the trial court and is based solely on self-serving hearsay from Mother, there is none. *See In re Marriage of Bentrott*, No. 07-23-00363-CV, 2024 WL 837928, at *1 (Tex. App.—Amarillo Feb. 23, 2024, order) (per curiam) ("Courtney has included an appendix with her emergency motion. Some documents are part of the appellate record; however, it is unclear whether all items contained therein are part of the record. . . . This Court will not consider documents outside the record." (internal citations omitted)).

Moreover, "[a] stay pending appeal is, of course, a kind of injunction, so the familiar considerations governing injunctive relief in other contexts will generally apply in this context as well." *In re State*, 711 S.W.3d 641, 645 (Tex. 2024) (orig. proceeding). Thus, "appellate courts asked to issue temporary relief pending appeal should make a preliminary inquiry into the likely merits of the parties' legal positions." *Id.* To that end, Mother has provided us with nothing by which we can judge whether she will be able to show the trial court impermissibly categorized the residence in question as Father's separate property. As Father points out, Mother does not even

contest the validity of the parties' prenuptial agreement in her motion. "[A] proper showing," I fear, this is not. *See* Tex. Fam. Code § 109.002(c).

The trial court is much better equipped than us to decide what is best for these children, and it has already made its decision. *See Bivins v. Bivins*, 709 S.W.2d 374, 375–76 (Tex. App.—Amarillo 1986, no writ) ("[W]e find indications in the Texas Family Code that the trial court is the preferred forum for the repair, maintenance, and policing of family matters while the appellate process pends." (citing §§ 6.709 and 109.002's predecessors)). If new facts had come to light since the trial court's decision and the children's welfare was truly in any danger, Mother could have asked us to abate to that court to hold a hearing on her motion. *See In re E.W.N.*, 482 S.W.3d 150, 156–57 (Tex. App.—El Paso 2015, no pet.) ("Appellate courts are not fact finders and we do not take testimony . . . . But nothing in Texas jurisprudence prevents a litigant from filing a motion with the court of appeals, explaining circumstances such as those contained in the hypotheticals, and asking the court to abate the appeal and remand to the trial court for an emergency hearing to protect the child. The appellate court can then review the specific circumstances in deciding whether to grant the motion."). We would have then at least had the benefit of a more developed record from which to judge whether the children might be harmed by the terms of the Decree.[4]

But for reasons known only to her, Mother chose not to avail herself of the relief obtainable under § 6.709 but instead chose to gamble on seeking relief no other court has ever awarded under § 109.002(c). And her gamble has apparently paid off. By allowing Mother to

---

[4] Mother could have also sought relief under Rule 24.2 of appellate procedure, which allows parties to post supersedeas bonds to stay a judgment "[w]hen the judgment is for the recovery of an interest in real or personal property." Tex. R. App. 24.2(a)(2).

remain in the home, the Court does exactly what it cautions against. Namely, the Court rewards Mother for "l[ying] behind the log[ and] wait[ing] for the deadline to move for a Section 6.709 temporary order of suspension to pass" and awards her the property rights the trial court originally denied her in its property division. However, because neither the Family Code nor the record in its current state supports granting this relief, I respectfully dissent in part.[5]

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Filed: July 24, 2025

_____

[5] I join the Court's decision to the extent it denies Mother's requested relief. However, I do not join the Court's reasoning and would simply hold that § 109.002 does not permit us to suspend the trial court's division of property.

13